UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTONIO D. TOWNSEND,<br><br>*Plaintiff*,<br><br>v.<br><br>DAVID LIEBEL, *Director of the Religious Services Dept.*, and<br>JACKIE STORM, *Programs Director, sued in their official and individual capacities*,<br><br>*Defendants*. | No. 2:23-cv-00429-JMS-MKK |

## ORDER

Plaintiff Antonio Townsend is a prisoner at the Wabash Valley Correctional Facility ("the prison"), and he is a practicing Muslim. He applied for access to a Kosher diet consistent with his religious beliefs. His application was denied, and he was subject to a 90-day waiting period before reapplying. He went on a hunger strike, then received Kosher meals, before finally reapplying and officially being approved for a Kosher diet. He has filed suit against Defendants David Liebel, the prison's Director of Religious Services, and Jackie Storm, the prison's Programs Director, in their official and individual capacities, for denying his Kosher-diet application and requiring him to wait 90 days to reapply, thereby violating his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.A. § 2000cc–1(a). [Filing No. 19.] Defendants have filed a Motion for Summary Judgment, which is ripe for the Court's consideration. [Filing No. 52.]

I.
STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

1

as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### STATEMENT OF FACTS

The facts stated below are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. Am. Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

### A.     The Prison's Kosher Applications for a Religious Diet

Mr. Liebel is the Director of Religious Services at the prison. [Filing No. 53-2 at 1.] Among other duties, he processes Kosher diet applications. [Filing No. 53-2 at 1.] Ms. Storm is the Program Director at the prison and is not "personally involved with religious diet requests, the processing of religious diet requests, or the approval or denial of religious diet requests." [Filing No. 53-2 at 2.]

To request a Kosher diet, prisoners fill out a standard form that instructs the prisoner to provide his religious preference. [Filing No. 53-2 at 1.] If an applicant's religion is anything other than Jewish, Hebrew Israelite, or Yahwist/Messianic, the "Kosher Application instructed the applicant to explain their reasoning why their sincerely held religious beliefs required a Kosher diet. The Kosher Application provided space for the applicant to provide their explanation and allowed an additional sheet of paper as needed." [Filing No. 53-2 at 2.] If a prisoner had a question about how to fill out the form, he "could send a request to the facility Chaplain to inquire about application instructions." [Filing No. 53-2 at 2.]

The policy of requiring offenders to apply for a Kosher diet "is important to both ensuring that offenders have access to a Kosher diet and assisting the [Indiana Department of Correction ("IDOC")] to practically and efficiently run their food services. The IDOC feeds approximately 23,000 offenders each day, totaling approximately 70,000 meals per day. As a result, careful planning is required, and the kitchen facilities are not set up to quickly customize meals for offenders." [Filing No. 53-2 at 3.] Kosher meals "are produced in limited quantities to accommodate those offenders who require the Kosher diet for their sincerely held religious beliefs and to not waste funds due to over ordering." [Filing No. 53-2 at 3.] To accommodate these logistical and cost concerns, after application is denied, an applicant must wait 90 days to submit

a new application "to allow the processing of Kosher Applications to operate efficiently as more than 1,000 Kosher applications were processed each year." [Filing No. 53-2 at 5.]

### B. Mr. Townsend Completes a Kosher Application as a Hebrew Israelite

Before 2023, there were "plenty of times" where Mr. Townsend was on the prison's Kosher diet. [Filing No. 53-1 at 27-28.] For example, he applied for a Kosher diet and was approved on March 7, 2022. [Filing No. 53-2 at 43.] The first time he filled out the form, he just "checked the box" and the prison permitted him to enroll in a Kosher diet. [Filing No. 53-1 at 27.] He did not mark that he was Muslim; he marked instead that he was Hebrew Israelite. [Filing No. 53-1 at 29.] Mr. Townsend states that he "never practiced" Judaism, but instead the Kosher diet was a vehicle to learn about religion. [Filing No. 53-1 at 30.] He remained on a Kosher diet for at least a year. [Filing No. 53-1 at 32.]

There were multiple times Mr. Townsend discontinued a religious diet: Mr. Townsend was diagnosed with hypoglycemia, which required special meals that were not Kosher; as a result, he was no longer on a Kosher diet. [Filing No. 53-1 at 32.] Mr. Townsend states that another time, he discontinued a Kosher diet because it caused him gastrointestinal distress. [Filing No. 53-1 at 33.] He applied to be removed from a Kosher diet on April 20, 2022. [Filing No. 53-2 at 44.]

### C. Mr. Townsend Converts to Islam

Mr. Townsend is now Muslim and began practicing Islam in 2022. [Filing No. 53-1 at 14-15.] As a part of practicing his faith, he must eat only Halal food because "Halal is the things and acts permitted by Allah. One who does so will be rewarded by Allah; one who does not do so will be punished by Allah." [Filing No. 53-1 at 15.] His "core ten[ets] relate to [his] request for a religious diet because Allah says that a Muslim should not eat the flesh of any animal which is forbidden by Allah, or the flesh of any animal that has died of a natural death, or the flesh of any animal that has been slaughtered by a nonbeliever." [Filing No. 53-1 at 16.] In Mr. Townsend's

4

faith as he practices it, "[c]ertain foods that are not considered Halal are deemed haram or forbidden. Certain foods, such as pork or alcohol, are always haram, while others, such as meat from cows, veal, lamb, sheep, goats, chickens, and ducks are deemed Halal, but only if they are slaughtered in the manner described by the Quran," the holy text of Islam. [Filing No. 53-1 at 18.] Even though his religion requires him to "eat a purely Halal diet," "considering that the IDOC [does not] provide that," an alternative is the Kosher diet associated with the Jewish faith. [Filing No. 53-1 at 20.]

### D. Mr. Townsend Applies for a Kosher Diet and Is Denied Due to Insufficient Information on the Application

Mr. Townsend filed a Kosher Application on January 30, 2023. [Filing No. 53-2 at 46.] The form states that if an applicant is Jewish, the applicant need not provide any more information about why he requests a Kosher diet. [Filing No. 53-2 at 46.] But Mr. Townsend identified his religious preference as Muslim. [Filing No. 53-2 at 46.] In such a situation, the application form states as follows:

> Other religious diet - If your offender information system designation is other than Jewish, Hebrew Israelite, or Yahwist/Messianic, use this space to explain why your sincerely held religious beliefs require a Kosher diet. (In the following space, please specify the foods and/or preparation methods that you believe are required or prohibited to satisfy your sincere religious beliefs and why. You may use one additional sheet of paper if needed.)

[Filing No. 53-2 at 46.]

Mr. Townsend answered only "I would like to have my meals & my beverages blessed before served to me." [Filing No. 53-2 at 46.]

On April 10, 2023, Mr. Liebel denied Mr. Townsend's application because it provided "insufficient information to support" his request. [Filing No. 53-2 at 47.] The denial letter informed him that he could "appeal this decision through the Offender Grievance Process [and] must follow the final appeal with Central Office." [Filing No. 53-2 at 47.] Mr. Liebel states that

5

"[t]he reason Offender Townsend was specifically instructed to follow the Offender Grievance Process through to the final appeal to the IDOC Central Office Manager was because no relief was available at the facility level due to the denial coming from IDOC Central Office." [Filing No. 53-2 at 5.] Additionally, between May 15, 2023, and July 17, 2023, IDOC was transitioning its offender management system to a new system and the Kosher Application system was changing as well, so IDOC paused the processing of Kosher Applications. [Filing No. 53-2 at 5.]

### E.   Mr. Townsend Starts a Hunger Strike and Receives Kosher Meals

When Mr. Townsend's request for a Kosher diet was denied, Mr. Townsend went on a hunger strike for about a month starting in June 2023, eating no food and drinking only water. [Filing No. 53-1 at 59.]

On June 28, 2023, Mr. Townsend asked Ms. Storm when he could reapply for a Kosher diet. [Filing No. 53-3 at 4.] He received a response letter informing him that he must wait 90 days, and because of the pause on applications, he would have to wait a little longer, until July 17, 2023. [Filing No. 53-3 at 4.] Ms. Storm did not draft this response letter, but rather, the prison Chaplain did. [Filing No. 53-3 at 2.]

When Mr. Townsend's "vitals were getting really low," a nurse recommended officers provide him with Kosher food. [Filing No. 53-1 at 59-60.] After that point, he received only Kosher meals. [Filing No. 53-1 at 61.]

### F.   Mr. Townsend Reapplies for a Kosher Diet

Mr. Townsend applied again officially for a Kosher diet on September 11, 2023. [Filing No. 53-2 at 49.] In this application, Mr. Townsend provided more detail:

> I am a practicing Muslim and Halal [includes] the things and acts permitted by Allah.  One who does so will be rewarded by Allah; and one who does not do so will be punished by Allah.  I am protected under the law to be a Muslim and eat a religious diet but only the religious diet that the IDOC/WVCF provides is "Kosher" and since there is overlap between the Halal and Jewish Kosher requirements, then the . . . "Kosher" diet that's available to those of the Jewish faith would be an acceptable alternative to the purely Halal diet, so long as it includes either Kosher or Halal meat.

[Filing No. 53-2 at 49.]  The application was approved, and Mr. Townsend has been on a Kosher diet ever since that time.  [Filing No. 53-1 at 78.]

### G.    Mr. Townsend's Overall Concerns About the Kosher Application

Mr. Townsend was not given a chance to fix his mistake on the form, and he was not told how to fix his mistake.  [Filing No. 53-1 at 52.]  Mr. Townsend was told that there is actually no "relief for this complaint at the facility level."  [Filing No. 53-1 at 53.]  Mr. Townsend believes that Ms. Storm responded to his grievance because he "sent it to her" and no one signed a name on the response.  [Filing No. 53-1 at 57.]

Mr. Townsend believes that his right to practice his religion was substantially burdened by Mr. Liebel denying his application and then directing him to engage in a grievance process that Mr. Liebel knew was unable to provide relief for Mr. Townsend's grievance and that his grievance "was going to get denied no matter what."  [Filing No. 53-1 at 67.]  As a result, he was forced to choose between daily nutrition and his religious beliefs.  [Filing No. 53-1 at 68.]  Ms. Storm and Mr. Liebel could have informed him to make his Kosher-diet application more specific and given him a chance to more-quickly amend his application instead of making him wait over 90 days to reapply.  [Filing No. 53-1 at 70-71.]  And he feels that the Kosher-diet application is "biased" because "there is nothing on that diet application for Muslims."  [Filing No. 53-1 at 74.]

Mr. Townsend believes he was denied access to the Kosher diet for being a Muslim. [Filing No. 53-1 at 49.]  He states that in the past, he just checked the box for Judaism, and to apply as a

7

different religion, he "wasn't sure how to file that application" and that "there's no way for [him] to understand how to file that application." [Filing No. 53-1 at 51.] Director Liebel "didn't even tell [him] if you're a Muslim, you have to put this." [Filing No. 53-1 at 51.]

### H.     This Lawsuit

Mr. Townsend filed suit against Mr. Liebel and Ms. Storm on August 24, 2023, in their official and individual capacities, alleging they violated his right to practice his religion under the First Amendment and RLUIPA. [Filing No. 2.] He alleges he was injured by having to suffer physically due to the hunger strike. [Filing No. 53-1 at 75.] He filed an Amended Complaint alleging the same claims "for denying [his] application or a religious diet." [Filing No. 19 at 8.] He alleges he was injured by having to suffer physically due to the hunger strike. [Filing No. 53-1 at 75.] He seeks damages and declarative and injunctive relief. [*See* Filing No. 19 at 8.]

As to injunctive relief, since he already has his Kosher diet, Mr. Townsend says that he is "pretty sure" the Court would "consider that moot." [Filing No. 53-1 at 79.]

## III.
### DISCUSSION

### A.     RLUIPA

Defendants argue that Mr. Townsend's RLUIPA claim is moot because he has been approved for a Kosher diet and has been receiving one since the summer of 2023. [Filing No. 54 at 14-15.] Mr. Townsend does not appear to respond to this argument. [*See generally* Filing No. 56.] Defendants reply to re-emphasize that Mr. Townsend's RLUIPA claim is moot because he could only receive injunctive relief. [Filing No. 57 at 4.]

"[M]ootness is a jurisdictional issue that cannot be passed over." *Thompson v. Bukowski*, 812 F. App'x 360, 364 (7th Cir. 2020). "A court's power to grant injunctive relief only survives if such relief is actually needed. The necessary determination is that there exists some cognizable

8

danger of recurrent violation, something more than a mere possibility." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (citation omitted), *abrogated on other grounds by Jones v. Carter*, 915 F.3d 1147, 1149–50 (7th Cir. 2019). "RLUIPA does not allow" suits for damages against state officials in their "individual capacit[ies]." *Nelson*, 570 F.3d at 889. Further, RLUIPA does not allow "private suits for money damages" against state officials in their official capacities. *Sossamon v. Texas*, 563 U.S. at 293. As for declaratory relief, "the federal declaratory-judgment statute" is not jurisdictional and requires an "actual controversy." *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 279 (7th Cir. 1988) (citing 28 U.S.C. § 2201). All RLUIPA allows for is "injunctive relief." *Thompson*, 812 F. App'x at 364.

In this case, Mr. Townsend received his Kosher diet. The Court acknowledges that "a defendant's voluntary cessation of a challenged practice does not necessarily moot a case. . . . Rather, the court must decide whether the complained-of conduct may be resumed." *Nelson*, 570 F.3d at 882-83. But Mr. Townsend offers no evidence that he will be denied a Kosher diet in the future and even admitted in his deposition that his request for injunctive relief is likely moot. [Filing No. 53-1 at 79.] "While it is of course theoretically possible that the [prison] will reverse [its] decision and [a prison official] will revoke [Mr. Townsend's] [Kosher] diet on some other basis, that possibility is supported only by speculation and not evidence." *Id.* at 882. Accordingly, the Court holds that Mr. Townsend's RLUIPA claim is moot. *See id.* (holding that a prisoner's RLUIPA religious-diet claim was moot because he was "receiv[ing] a non-meat diet and there is no evidence in the record that the diet will be revoked").

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Townsend's RLUIPA claims against Ms. Storm and Mr. Liebel in both their individual and official capacities.

### B. First Amendment Claim

#### 1. Ms. Storm

Ms. Storm argues that she was not personally involved in denying Mr. Townsend's application for a Kosher diet and that a prison chaplain wrote the letter responding to Mr. Townsend's request about when he could reapply for a Kosher diet. [Filing No. 54 at 15.] Because a First Amendment claim brought pursuant to Section 1983 requires personal involvement and does not permit supervisory liability based on respondeat superior, she argues that as a matter of law, she is entitled to summary judgment. [Filing No. 54 at 15-16.]

In response, Mr. Townsend states that he sent a letter requesting an interview with Ms. Storm, which informed him of the 90-day wait to reapply, but he does not address the question of Ms. Storm's personal involvement. [Filing No. 56 at 12.]

Ms. Storm replies that she was not personally involved in denying Mr. Townsend's Kosher Application and states that Mr. Townsend "has not shown any involvement of [her] other than his initial belief that she responded to his request," so "it now goes undisputed that [she] was not personally involved." [Filing No. 57 at 5.]

It is well-established that "'[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In this case, Mr. Townsend has not provided any evidence to dispute that Ms. Storm did not respond to his request regarding the denial of his Kosher Application, and in any event, if Ms. Storm did affirmatively respond and deny his internal complaint, that would not provide him grounds for relief. *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009) (holding that a denial of a prisoner's grievance is not actionable as a deprivation of a constitutional right).

10

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Townsend's First Amendment claim against Ms. Storm in both her individual and official capacities.

        2.     *Mr. Liebel*

Mr. Liebel argues that Mr. Townsend's First Amendment rights were not violated. [Filing No. 54 at 10.] He argues that the simple requirement of filling out a Kosher Application form is not a substantial burden on Mr. Townsend's religious practice, and that the application was not denied arbitrarily but rather because it was insufficiently detailed. [Filing No. 54 at 12.] He argues that the economic and logistical concerns of running a Kosher diet operation for thousands of prisoners is a legitimate penological interest and that denying Mr. Townsend's application with a 90-day waiting period for reapplication serves that interest. [Filing No. 54 at 13-14.] He notes that Mr. Townsend reapplied for a Kosher diet well after the date that he was eligible to reapply. [Filing No. 54 at 14.]

Mr. Townsend responds that he was forced to choose between his religious practice and adequate nutrition. [Filing No. 54 at 5.] He states that the Kosher Application stated that applicants "do not need to provide further explanation" other than checking a box. [Filing No. 54 at 5.] He argues that instead of making him wait 90 days to reapply, the prison simply could have "ask[ed] him just to provide more detail or simply allow[ed] him to file a new, more specific, diet application sooner than the 90 days." [Filing No. 54 at 12.] And he argues that the fact that he received Kosher meals due to his hunger strike indicates that Kosher meals "have no impact on any other inmates, staff, nor facility resources." [Filing No. 54 at 13.]

Mr. Liebel replies that the Kosher Application permits applicants to add no additional information if their religious preference was Jewish, Hebrew/Israelite, or Yahwist/Messianic and that otherwise the applicant must provide more detail. [Filing No. 57 at 1-2.] As such, Mr. Liebel argues, the application was appropriately denied because Mr. Townsend stated only that he wanted

11

his food blessed, so the denial was not a substantial burden on his religious practice. [Filing No. 57 at 2.] Mr. Liebel argues further that the prison has a legitimate interest in an efficient food operation and pausing reapplications for Kosher meals serves that purpose. [Filing No. 57 at 2-4.]

To succeed on his First Amendment free-exercise claim, a prisoner must convince the factfinder that the defendants "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). "[A] substantial burden on religious exercise occurs when a prison attaches some meaningful negative consequence to an inmate's religious exercise, forcing him to choose between violating his religion and incurring that negative consequence." *West v. Radtke*, 48 F.4th 836, 845 (7th Cir. 2022) (citing *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019)). "In assessing whether a burden is substantial, [the Court] focuses primarily on the intensity of the coercion applied by the government and not the centrality of the religious practice in question." *West,* 48 F.4th at 845 (citation omitted). This standard is "easily satisfied" where the governmental policy "seriously violates [a prisoner's] religious beliefs." *Schlemm v. Wall*, 784 F.3d 362, 364 (7th Cir. 2015). Regarding religious diets, it is a "substantial burden on . . . religio[n]" "[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice." *Jones*, 915 F.3d at 1150.

In this case, the Kosher Application form was clear that if an applicant was not Jewish, an applicant should provide additional details as to why a prisoner requests a religious diet. Mr. Townsend was not Jewish, and instead of providing details as to why he wanted a religious diet, he provided only details as to what he wanted that religious diet to entail, a blessing of his food. Simple instructions on a form, especially one Mr. Townsend has filled out multiple times, are not a substantial burden. *See, e.g.*, *Isby-Israel v. Lemmon*, 2016 WL 3072177, at *5 (S.D. Ind. June 1, 2016) (holding that "[r]equiring [a prisoner] to sign his Offender Request for Religious

12

Accommodation form before accommodating his religion by providing a Kosher diet is not a substantial burden.")

Preventing Mr. Townsend from correcting his application for 90 days is potentially a different question. The Seventh Circuit has indicated that a Muslim prisoner's not having access to Halal food for 55 hours could be a substantial burden on the exercise of religion. *Thompson*, 809 F.3d at 380. The Court assumes for the sake of analysis that his religious rights were substantially burdened by a 90-day waiting period.

Nonetheless, even when a prisoner's religious exercise is substantially burdened, there is no liability if that burden is justified by a legitimate penological interest: "[A]n inmate is not entitled to follow every aspect of his religion; the prison may restrict the inmate's practices if its legitimate penological interests outweigh the prisoner's religious interests." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005). Thus, even a substantial burden is permitted if the burden is "reasonably related to legitimate penological objectives." *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011) (citing *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)). "Courts consider four factors when evaluating a prison policy against a First Amendment claim: (1) whether the policy rationally relates to a legitimate governmental objective; (2) whether the inmate has an alternative means of exercising the right; (3) the impact that accommodating the right will have on security; and (4) whether ready alternatives exist to the prison's policy." *Larry v. Goldsmith*, 799 F. App'x 413, 415 (7th Cir. 2020); *see Turner*, 482 U.S. at 89-91 (outlining similar factors).

Correctional officials are allowed to "appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). So "[a] prison is entitled to ensure that a given claim

13

reflects a sincere religious belief, rather than a preference for the way a given diet tastes, a belief that the preferred diet is less painful for animals, or a prisoner's desire to make a pest of himself and cause trouble for his captors." *Vinning-El*, 657 F.3d at 594. These inquiries can properly serve the legitimate penological interest of administrative, logistical, and economical concerns, so in general, a prison can justifiably require prisoners to properly declare their need for a religious meal to avoid crippling logistical issues. *See, e.g.*, *Riley v. Ewing*, 777 F. App'x 159, 160 (7th Cir. 2019) (affirming summary judgment on qualified-immunity grounds against prisoner who wanted 60 days of meals for Ramadan but missed the deadline to sign up even though the prisoner "knew that there was a sign-up deadline and had signed up successfully in past years" and where "the prison would have difficulty granting exceptions for all inmates who missed the deadline"); *Schlemm v. Carr*, 760 F. App'x 431, 437 (7th Cir. 2019) (holding that "[r]equiring the prison to allow outside restaurants and caterers to supply fresh game meat could unduly frustrate the Department's administrative, safety, and security concerns"). Further "simplified food service, security, and budgetary concerns are legitimate penological interests." *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005) (citing *Williams v. Morton*, 343 F.3d 212, 220-21 (3d Cir. 2003)).

The Court acknowledges that "a sign-up deadline" or other time-based restraints on applying for a religious diet are not always reasonable, and a prison may be required to "indicate[] that convenience and notice to prison staff justified the rejection of [a prisoner's] request to participate" in a religious diet program. *Id.* (vacating and remanding in part where Muslim prisoner missed deadline to enroll in Ramadan fasting meal program "by just four days" and prison "offered no evidence to explain the additional effort that would have been required to include [the prisoner] in the fast"). But in this case, Defendants have made it clear that the prison serves food to thousands of inmates and processes thousands of Kosher Applications. It is expensive to over-

14

order Kosher food and logistically unwieldy to contact every applicant who does not correctly fill out a basic form. A 90-day waiting period is a proper incentive to encourage applicants to carefully read simple instructions to make the Kosher food program run smoothly for everyone in the prison. *See, e.g.*, *Koger v. Bryan*, 523 F.3d 789, 800 (7th Cir. 2008) (observing that "orderly administration of a prison dietary system, and the accommodations made thereunder, are legitimate concerns of prison officials," including the "religious dietary needs of thousands of prisoners.") (quoting *Resnick v. Adams,* 348 F.3d 763, 769 (9th Cir. 2003)). This is especially the case considering that applications for religious diets entail the "potential for mischief and game-playing." *Id.* at 805 (Evans, J. concurring) (referencing vegetarian prisoner who entered prison as a Baptist, then became a Buddhist, and then became a member of the "Ordo Templi Orientis" and noting "one would not be terribly surprised if [the prisoner] has had a beef tenderloin or a Big Mac since he left prison").

The existence of a Kosher Application is not an inherently substantial burden upon Mr. Townsend's religious practice, and even if a 90-day waiting period before reapplying were a substantial burden, it is amply justified by the prison's legitimate penological interests of administrative, logistical, and economic concerns.

The Court **GRANTS** Defendants' Motion for Summary Judgment as to Mr. Townsend's First Amendment Claim against Mr. Liebel in his individual and official capacities.[1]

### IV.
#### Conclusion

For the reasons described above, the Court **GRANTS** Defendants' Motion for Summary Judgment, [52.]

---

[1] Because the Court grants summary judgment on the merits, it need not address arguments regarding qualified immunity. [Filing No. 54 at 16.]

Final judgment shall issue accordingly.

Date: 5/29/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

ANTONIO D. TOWNSEND
228661
CORRECTIONAL INDUSTRIAL FACILITY (CIF)
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Breanne Chambers
Office of Indiana Attorney General
breanne.chambers@atg.in.gov

Jonathan Freije
Office of Indiana Attorney General
jonathan.freije@atg.in.gov

Elijah B. Mollet
Lewis And Wilkins LLP
emollet@lewisandwilkins.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com